# EXHIBIT C

CALIFORNIA LEGISLATURE

AT SACRAMENTO

1983–84 REGULAR SESSION

# SENATE FINAL HISTORY

## SHOWING ACTION TAKEN IN THIS SESSION ON ALL SENATE BILLS CONSTITUTIONAL AMENDMENTS, CONCURRENT, JOINT RESOLUTIONS AND SENATE RESOLUTIONS

CONVENED DECEMBER 6, 1982
ADJOURNED SINE DIE NOVEMBER 30, 1984

DAYS IN SESSION ................................................................ 266

CALENDAR DAYS ................................................................ 726

LT. GOVERNOR LEO T. McCARTHY
*President of the Senate*

SENATOR DAVID ROBERTI
*President pro Tempore*

*Compiled Under the Direction of*
DARRYL R. WHITE
*Secretary of the Senate*

*By*
DAVID H. KNEALE
*History Clerk*

Nguyen Exh. C p. 1

SENATE FINAL HISTORY

S.B. No. 1457—Lockyer.

An act to amend Section 2870 of the Labor Code, relating to employee inventions.

1984

Jan.   24—Introduced. Read first time. To Com. on RLS. for assignment. To print.

Jan.   25—From print. May be acted upon on or after February 24.

Feb.   2—To Com. on I.R.

Mar.   5—Set for hearing March 28.

Mar.   26—From committee with author's amendments. Read second time. Amended. Re-referred to committee.

April   3—From committee: Do pass as amended. To Consent Calendar. (Ayes 7. Noes 0. Page 8793.)

April   4—Read second time. Amended. To Consent Calendar.

April   12—Read third time. Passed. (Ayes 37. Noes 0. Page 9447.) To Assembly.

April   12—In Assembly. Read first time.  Held at Desk.

April   24—To Com. on L. & E.

May   22—Hearing postponed by committee.

May   30—From committee: Do pass. (Ayes 8. Noes 0.)

May   31—Read second time. To third reading.

June   28—Read third time. Amended. To third reading.

Aug.   7—Read third time. Passed. (Ayes 58. Noes 10. Page 18320.) To Senate.

Aug.   7—In Senate. To unfinished business.

Aug.   9—Returned to Assembly for further action.

Aug.   9—In Assembly. Action rescinded whereby bill passed and to Senate.

Aug.   16—Read third time. Amended. To third reading.

Aug.   30—Read third time. Passed. (Ayes 50. Noes 24. Page 20421.) To Senate.

Aug.   30—In Senate. To unfinished business.

Aug.   31—Senate refuses to concur in Assembly amendments. (Ayes 0. Noes 31. Page 14216.)

Nov.   30—Died on file.

# SENATE BILL

## No. 1457

## Introduced by Senator Lockyer

### January 24, 1984

An act to amend Section 2870 of the Labor Code, relating to employee inventions.

LEGISLATIVE COUNSEL'S DIGEST

SB 1457, as introduced, Lockyer.   Employee inventions.

Existing law provides that any provision in an employment agreement which provides that an employee shall assign or offer to assign any of his or her rights in an invention to his or her employer shall not apply to an invention which meets specified conditions.

This bill would, in addition, define the term "invention" for these purposes to mean ideas, creations, and innovations in which there may be a property right, whether or not it is patentable or copyrightable under the laws of the United States.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1    SECTION 1. Section 2870 of the Labor Code is
2    amended to read:
3    2870.   *(a) As used in this article, "invention" means*
4    *ideas, creations, and innovations in which there may be*
5    *a property right, whether or not it is patentable or*
6    *copyrightable under the laws of the United States.*
7    *(b)*   Any provision in an employment agreement
8    which provides that an employee shall assign or offer to
9    assign any of his or her rights in an invention to his or her
10    employer shall not apply to an invention for which ~~no~~ *all*
11    *of the following are true:*

SB 1457                                    — 2 —

1      *(1) No* equipment, supplies, facility, or trade secret
2   information of the employer was used ~~and which~~ .
3      *(2) It* was developed entirely on the employee's own
4   time ~~; and (a) which~~ .
5      *(3) It* does not relate ~~(1)~~ to the business of the
6   employer or ~~(2)~~ to the employer's actual or demonstrably
7   anticipated research or development, or ~~(b) which~~ *it*
8   does not result from any work performed by the
9   employee for the employer.
10     *(c)* Any provision which purports to apply to such an
11  invention is to that extent against the public policy of this
12  state and is to that extent void and unenforceable.

O

 # THE PROCTER & GAMBLE COMPANY

PATENT DIVISION

6071 CENTER HILL ROAD
WINTON HILL TECHNICAL CENTER
CINCINNATI, OHIO 45224

February 23, 1984

Mr. Greg Schmidt
State Capitol Bldg., Room 4085
Sacramento, California 95814

Dear Mr. Schmidt:

Here is the copy you requested of the article referring to a problem with interpretation of California Labor Code §2870.   I do not know the source from which it was taken.  I'm sure the author, Mr. Parsons, could tell you.

As I mentioned in our conversation, at first glance, my impression was that California Senate Bill 1457 attempted to correct this problem.  After reviewing the bill further, and going over it with you, it's clear that it does not.

Very truly yours,

M. J. Roth
(513) 659-7939

fm/d336

Note: 2/7/84 AL DAVIS - Dow Chemical came by -

Nguyen Exh. C p. 5

# California Labor Code §2870: Can We Advise Our Clients that its Scope is Certain?

By Gerald P. Parsons,
Limbach, Limbach & Sutton

Sections 2870-2872 were added to the California Labor Code in 1979 to restrict the scope of inventions that an employer can require through an employment agreement that its employees assign to it. This statute and the growing trend of similar legislation in other states has been a subject of considerable discussion among the patent bar. The more discussion that takes place the more it appears to this writer that the scope of the statute is unclear.

Section 2870 was adopted verbatim from a law passed earlier in Minnesota. It is believed to be unclear about the rights in inventions that do not result from an employee's work but that do relate to the employer's business or R&D. In my opinion, the statute, when literally read, prohibits an employer from taking title to such an invention, unless some equipment, supplies, facility or trade secret information of the employer was used in making the invention. The mentioned uncertainty arises from a strong suspicion that this was not what the California Legislature intended. But whether such intent could be proven in litigation involving the issue of the statute's scope is uncertain. We cannot, therefore, advise our clients with certainty as to its scope until the matter is decided by a California or Minnesota court.

Section 2870 is a complicated combination of "and" and "or" subparts that are stated in the double negative, thus making it difficult to comprehend its scope. Paraphrasing the section, an employer is prohibited from requiring the assignment to it of an employee invention made under the following circumstances:

I. When no employer time, equipment, supplies. facility or trade secret information are used,
and

II.  (a) which does not relate to the employer's business or research and development,
or

(b) which does not result from the employee's work for the employer.

An employer cannot obtain rights in an employee's invention in which both of the factors I and II are present (really, the absence of these factors because they are stated in the negative). The problem is in determining when factor II is present. Factor II is present if *either* (a) *or* (b) is present. That is, if the invention *either* does not relate to the employer's business or R&D *or* does not result from the employee's work, assignment of it cannot be required by the employer in its employement agreement. Such an invention remains the employee's under this literal view of the statute. *The critical "or" between subparagraphs (a) and (b) makes the pre-*

## Literally read, this statute may mean something far different than the California Legislature intended.

*sence of either factor throw the invention outside of the scope of a legitimate employment agreement.* Therefore, an invention outside an employee's work is not assignable to the employer, under this literal interpretation, even though the invention is within the scope of its business or R&D, unless any of the factors I are present to kick the invention over to the employer's side. Had this critical "or" been made an "and" instead, it would require *both* of the factors (a) and (b) to be present before the employee would retain ownership, resulting in all inventions within the employer's business or R&D remaining with it regardless of whether the invention is outside of the employee's work. But the statute was not so phrased.

Is this the result that the California Legislature intended? There is no legislative history in California as there is in Congress; that is, there are no transcripts of debates, committee hearings, committee reports etc. that could help us interpret this piece of legislation. Looking back on this observer's contacts with those actively involved in the legislation, there is some cause to suspect that the "or" between paragraphs (a) and (b) above was really meant to be an "and". That is, it seemed that those directly involved assumed that all employee inventions within the business or R&D of the employer could legitimately be within the scope of an employment agreement, even though not related directly to the employee's work.

In California, current testimony of legislators, staff and others involved concerning the statute's intended scope is admissible for interpreting it. (See student note "Statutory Interpretation in California: Individual Testimony as an Extrinsic Aid" 15 USF Law Review 241, Fall/Winter 1980-81.) It has further been held that a statute's literal meaning, even when unambiguous, may be disregarded to carry out the purpose of the Legislature. *Silver* v. *Brown* 63 Cal. 2nd 841 (1966). California Labor Code section 2870 may be unambiguous but its meaning is certainly not immediately clear because of its complicated structure.

The statute itself provides a clue as to its intended scope. Recall that an employer cannot take title to an invention that either (a) does not relate to its business or R&D or (b) does not result from the employee's work. The employee needs to show the existence (really, absence) of only one of these factors to retain title to an invention, if he did not use employer trade secrets, supplies, etc. Because the employee's work will always be within its business or R&D, by definition, query whether the literal statutory interpretation doesn't have the effect of writing out sub-paragraph (a) pertaining to the employer's business or R&D. Sub-paragraph (a) will never be used to exclude an employer from taking title to an invention because there can never be a situation of an invention resulting from the employee's work that is outside of the employer's business or R&D. Sub-paragraph (a)

Continued on page 10

6

# California Labor Code §2870

Continued from page 6

of the statute is thus rendered redundant and unusable under the literal interpretation given here. This provides some indication that the legislature really intended employers to be prevented from taking title to an invention only when it is outside of *both* (a) the employer's business or R&D *and* (b) does not result from the employee's work. Otherwise, subparagraph (a) could have been omitted from the statute.

It is interesting to note that the states of Washington and North Carolina (both of which have similar statutes patterned after the Minnesota Act) made a few changes in the language that make it absolutely clear

# Synergism

In a landmark and well-reasoned opinion, the Ninth Circuit Court of Appeals expressly repudiated synergism as a separate test for patentability in *Sarkisian v. Winn-Proof Corp.,* decided November 27, 1981.

The case was tried to the District Court for the Federal District of Oregon and, in an opinion dated June 15, 1978, that court found one patent valid and infringed while another was struck down for double patenting. Judge Alarcon, speaking for the court of appeals, took the opportunity to discuss in depth, and dispense with, synergism, while affirming as to the first patent and overturning the lower court on the double patenting invalidation. An initial report of the decision appeared in the BNA's Patent, Trademark & Copyright Journal of December 10, 1981.

Congratulations are in order for the court, which grappled with a very difficult problem, and took a strong, positive stand to clarify much confusion, and for the attorneys who were able to convince the court that a separate synergism test was not necessary, that the obviousness test enunciated by the Supreme Court in *Graham v. John Deere Co.* is the "touchstone for determining the obviousness and hence the patentability of any invention."

that both factors (a) and (b) must be present before an employer loses title to an invention, not just one of them. Although the general structure of these other state statutes is similar to that of the Minnesota and California Acts, its literal meaning is quite different and clear.

The result in California is an uncertainty in advising clients whether inventions that do not result from an employee's work assignment, but are within the employer's business or R&D, belong to the employee or the company. There arises a further problem in writing employment agreements to meet the requirements of the statute. To satisfy its requirements, one approach is to draft the provision relating to the employee's duty to assign to encompass all inventions, or some lesser defined class of inventions, and then to exclude from the scope of the agreement those inventions retained to the employee by Labor Code section 2870. By using the exact language of the statute, and by referencing that language as coming from the statute, the employment agreement thus satisfies its terms and its scope and should be interpreted consistent with any interpretation of the scope of the statute. By carefully avoiding interpreting or paraphrasing the statute in any way when drafting employment agreements, there is no possibility of an agreement's scope being inconsistent with the statute as it may be later interpreted.

Company attorneys who have not before considered the literal interpretation given above may view with some alarm the possibility that an employee may take title to an invention within the employer's business and R&D just because it did not result from his work for the employer. However, the employer is well provided for, even under this narrow (from the employer's viewpoint) interpretation. The employer gets everything resulting from the employee's work plus all inventions for which the employer's time, equipment, supplies, facilities or trade secret information were utilized (Factor 1 of the paraphrased statute, above). Cross-fertilization among different divisions of a large company is still possible since any invention based upon the company's trade secrets would belong to it even though not resulting from the assigned task of the inventor. After all, the main

reason we draft agreements to give the company rights in all inventions within the scope of its business is to make sure that its investment in technical know-how and trade secrets is preserved. The concern is for a company to retain title to any inventions to which such an investment has significantly contributed. The narrow interpretation of the California statute satisfies this employer interest by permitting an employement agreement to include inventions based upon the company's trade secret information.

This narrow, literal interpretation has a further advantage from a Federal Patent Policy point of view. It restores to employed inventors the incentive to invent and innovate in areas unrelated to their employment. This incentive is what the patent laws are supposed to be all about. There is a significant dampening effect on individual innovation outside the job if the potential innovator has the broader duty to assign all inventions "within the business of the employer or to the employer's actual or demonstrably anticipated research or development" regardless, as the broader, non-literal interpretation of the statute would provide. The quoted provision of section 2870 can make very fuzzy indeed the scope of subject matter for which an employee has the duty to assign. This is particularly the case in a large company whose actual or anticipated business or R&D is extremely varied and not readily ascertainable to its innovative employees, and perhaps not even to its patent counsel.

But regardless of these policy considerations, a court or legislative determination of the scope of Labor Code section 2870 is needed.

# National Inventors Day

Induction ceremonies to the National Inventors Hall of Fame are planned for February 7, 1982 in conjunction with the Tenth Annual National Inventors Day Program. National Inventors Day has traditionally been February 11, the anniversary of the birth of Thomas A. Edison, the nation's foremost inventor. Exhibits and programs are planned for the first weekend in February in keeping with the significance of the occasion.

# Corporation

trols all of the income and disposition of moneys. There really isn't much income to be taxed at high rates if the corporation has only one income producer and a substantial portion of the income is deferred and not taxable.

But the real "flash of genius" (not mine) that completely changed my thinking was the realization that I don't have to give up my desperately needed money for 25 years. I can have my cake and eat it too! Tax lawyers now tell me how elementary this is, and how stupid I was not to realize it, but I confess it never sunk in.

I will use as an example a hypothetical Southern California patent lawyer making, for illustrtion, $100,000 per year (100 is an easy number to deal with, and this is the income of the routineer in Southern California, even though just dreamed of by us northern practitioners). If his tax is 50% on his top $25,000, he pays $12,500 in taxes on the top quarter of his income. If $25,000 is placed in a retirement fund, he neatly saves $12,500 in federal income taxes. If he turns around and borrows the $25,000 from his retirement fund, he not only has the money he would have had without a retirement fund, he has an extra $12,500 that would have gone to Uncle Sam.

The revelation was that you can currently borrow the money in your retirement fund. You can't do this in a Keogh plan, which is why I never understood before. Granted you must pay a reasonable interest rate, but I don't mind paying 20% interest to my own retirement fund, even though I gag at that rate to any other lender. Granted, also, you must secure the loan honestly. But those who have owned a house even a few years often have plenty of security for loans. Moreover, to have exactly the same spendable income level as without incorporating, our hypothetical patent lawyer need only borrow *half* of the money put into the retirement fund ($12,500), because the balance is what the tax bite would have been.

Maybe I will become so indebted to my retirement fund over the years that I will regret the decision, but my youngest child needs only seven more years of schooling. There may be flaws in the reasoning, but for the moment, I am a born-again tax dodger.

# Employment-Invention Contracts, A History of California Code Sections 2870-2892

By J. B. McGuire,
Finkelstein, McGuire & Thut,
Los Angeles

In 1978, AB 2257 was introduced into the state legislature. Under that bill, an employee would have retained title to all of his inventions. If the employer notified the employee that he was interested in such an invention, the employer and employee would have negotiated the terms for use of the invention by the employer.

AB 2257, as originally introduced, would have radically altered the usual contractual relationship of employment, and would also have eliminated the employer's common-law shop right as defined in *U.S.* v. *Dubilier Condensor Corp.*, (1933) 289 U.S. 178; 17 U.S.P.Q. 154, 158. If an employer was required to negotiate terms for an assignment or a license if he had a contract with the employee, it is illogical to argue that he could have used the invention for free, under a shop right, in the absence of such a contract.

In any event, AB 2257 received strong opposition in 1978 and was amended into the following form:

1   2870. Notwithstanding the provisions of Section
2  2860, any provision in an employment agreement which
3  provides that an employee shall assign or offer to
4  assign any of his or her rights in an invention to his
5  or her employer shall not apply to an invention for
6  which no equipment, supplies, facility, or trade secret
7  information of the employer was used and which was devel-
8  oped entirely on the employee's own time, and (a) which
9  does not relate (1) directly to the business of the
10  employer or (2) to the employer's actual or demonstrably
11  anticipated research or development, or (b) which does
12  not result from any work performed by the employee for
13  the employer. Any provision which purports to apply to
14  such an invention is to that extent against the public
15  policy of this state and is to that extent void and
16  unenforceable.

17   2871. No employer shall require a provision made
18  void and unenforceable by Section 2870 as a condition of
19  employment or continued employment.

29   2872. If an employment agreement entered into after
30  January 1, 1980, contains a provision requiring the
31  employee to assign or offer to assign any of his or her
32  rights in any invention to his or her employer, the
33  employer must also, at the time the agreement is made,
34  provide a written notification to the employee that the
35  agreement does not apply to an invention for which no
36  equipment, supplies, facility, or trade secret infor-
37  mation of the employer was used and which was developed
38  entirely on the employee's own time, and (a) which does
39  not relate (1) directly to the business of the employer
40  or (2) to the employer's actual or demonstrably
41  anticipated research or development, or (b) which does
42  not result from any work performed by the employee for
43  the employer.

As a result of the normal legislative logjam at the end of the 1978 session, AB 2257 failed to receive the necessary approvals and died upon adjournment; it was reintroduced in its amended form by Assemblyman Goggin as AB 474 in 1979.

Some of the problems with AB 474 as introduced were:

(a) The employee, apparently, could unilaterally determine whether his invention belonged to himself or his employer.

Continued on page 8

7

Nguyen Exh. C p. 8

# Employment-Invention Contracts

Continued from page 7

(b) The company could not require the disclosure of all of the employee's inventions; by the time the company might learn about the invention, all records, etc., *and* the employee might be gone or be on the opposite side of an infringement suit.

(c) The burden of proof would be on the employer to prove that an invention should belong to the company, requiring a very oppressive, "Orwellian" employment atmosphere: phone calls would have to be monitored, all drawings, conversations, etc., documented, and so forth. This atmosphere would stifle any inventor.

(d) Under Labor Code section 2860, all of the fruits of employment belong to the employer. Since 474 was defining certain inventions to be other than fruits of the employment relationship, there was no need to create an exception to section 2870.

(e) Assignable inventions had to relate *directly* to an employer's business, leaving doubts about pure R&D in other areas. Inventions were excluded which might relate *indirectly*. There was no definition or guidelines for determining what was "direct" or "indirect".

(f) The bill conflicted with requirements for assignment of inventions conceived and/or first actually reduced to practice under a government contract.

(g) The word "developed" (lines 7 and 8 above) has no meaning under the law of inventions: here, does it mean conceived and/or actually or constructively reduced to practice? Or does it mean actually brought into the marketplace in the sense proposed by an invention developer?

The following amendments were proposed to Goggin by the California Manufacturer's Association.

A. Lines 1 and 2, replace "Notwithstanding . . . any" with "Any";

B. Line 2, after "agreement", insert "entered into after January 1, 1980,";

C. Line 6, after "facility," insert "other resources, or proprietary or";

D. Line 7, before "developed", insert "conceived and";

E. Line 9, after "directly" insert "or indirectly";

F. Line 9, after "business", insert ", activities, work, products, projects, or any logical extension thereof";

G. Line 10, strike "demonstrably";

H. Line 11, before (b), replace "or" with "and";

I. Line 12, replace "the employee" with "any employee, consultant, or independent contractor";

J. Line 19, after "employment,", insert: "Nothing in this act shall be construed to forbid or restrict the right of an employer to provide in contracts of employment for timely notice from the employee as to his plans, intentions, or projects for inventions or patents, and a review process by the employer to determine such issues as may arise. The provisions of this act shall not apply to any employment contract providing for full title to certain patents and inventions to be in the United States, as required by contracts between the employer and the United States or any of its agencies.";

K. Lines 35-43, replace "for . . . employer." with "which qualifies fully under the provisions of Section 2870. In any suit or action arising thereunder, the burden of proof shall be on the employee claiming the benefits of its provisions.".

These amendments were all rejected by Goggin. The proposed amendments were then reduced to four: A, E, and K above, plus the following:

Line 19: after "employment." insert: "Nothing in this act shall be construed to forbid or restrict the right of an employer to provide in contracts of employment for disclosure of all of the employee's inventions made solely or jointly with others during the term of his employment, a review process by the employer to determine such issues as may arise, and for full title to certain patents and inventions to be in the United States, as required by contracts between the employer and the United States or any of its agencies.".

These amendments were also rejected and the Assembly approved the bill without amendment. The bill was then assigned to the Senate Industrial Relations committee.

On June 5, 1979, Mr. Goggin proposed to write the following letter to the members of the Assembly and Senate:

"I am writing to clarify an ambiguity that has arisen in connection with my AB 474, now in its final stages of consideration in the Senate.

"AB 474 provides that a place ... ... ... ... ment, supplies ... ... ... formation or other assistance of the em-

ployer and where the invention does not relate directly to the business or the demonstrably anticipated research and development of the employer, that invention belongs solely to the employee regardless of any employment agreement to the contrary.

"The problem of interpretation concerns the definition of the term employer as used in the context of this proposed statute. A person employed by a conglomerate corporation having multiple divisions, affiliates or subsidiaries may find that his or her employer's "business" is so varied and far-reaching that any inventions, no matter how far afield of the concern of that employee's own division, affiliate, or subsidiary, relates to the business or research and development of the parent corporation. Such an interpretation of the term employer frustrates the obvious intent of AB 474 that otherwise independent inventions of the employee should belong solely to that employee.

"In order to ensure that the patent rights of employees do not fluctuate wildly depending upon the market position of an employee's parent corporation, it is necessary to declare as the legislative intent of AB 474 that in a corporation having multiple divisions, affiliates, subsidiaries, profit centers or companies, the term employer as used in AB 474 shall relate only to the division, affiliate, subsidiary, profit center, or company (whichever unit is smallest) rather than to the parent corporation.

"I would also respectfully request that a copy of this letter be transmitted to the Senate Clerk for entry into the Senate Journal."

At its first hearing in the Senate Committee, the bill failed to pass, but the committee agreed to reconsider the bill at a later date and received many letters in the interim.

The point of all these letters was best summarized in one letter as follows:

"The recent development which prompts me to write to you is the letter of 5 June 1979 by the Bill's author, expressing the legislative intent of AB 474. If this interpretation were ...

8

## PATENT, TRADEMARK AND
## COPYRIGHT SECTION
## EXECUTIVE COMMITTEE

**Thomas F. Smegal, Jr.**
Chair
San Francisco

**Walter R. Thiel**
Vice-Chair
Beverly Hills

**Thomas E. Ciotti**
Secretary-Treasurer
Palo Alto

**Julian Caplan**
Menlo Park

**Richard F. Carr**
Orange

**Stanley Z. Cole**
Palo Alto

**Donald C. Feix**
Burlingame

**Corwin R. Horton**
San Francisco

**Theodore H. Lassagne**
Los Angeles

**Donald N. MacIntosh**
San Francisco

**Neil Foerster Martin**
San Diego

**J. B. McGuire**
Los Angeles

**Joseph E. Szabo**
Los Angeles

**F. A. Utecht, Jr.**
Long Beach

**Robert M. Vargo**
Newport Beach

# Employment-Invention Contracts

Continued from page 8

is, by customer or end-user application, such an interpretation would bring about what surely must be an unintended result. [This] corporation itself includes several divisions that make similar or related products but marketed to different customers or end-user applications.

"By way of example, an employee of company division 'A', using information developed at Government or private expense by another company division 'B' might make an invention relating to the product of company division 'B'. Under AB 474, the employee could conceivably own the invention and the corporation, the party with whom the customer contracts, would have no invention rights to convey to its customer. *The result would be to put California companies at a disadvantage in competing for Government contracts.* It would also serve to inhibit technology and information exchange between sister organizations because of the risk that an employee of one organization would totally own an invention made on his own time but based upon technical information obtained from a related organization.

"The Bill reserves to the employee inventions for which no 'equipment, supplies, facilities or trade secret information' of the employer is used, providing certain other conditions are met. [A] modern industrial company often generates or accumulates a substantial amount of technical information as the result of expenditure of considerable effort and expense. Just because the accumulation does not rise to the level of a technical 'trade secret' ... does not

make it equitable to allow an employee to freely appropriate it to make a privately owned invention to which the employer has no rights. Such a result directly condones a result which the law of unfair competition seeks to proscribe—to permit one to unfairly 'take a short cut'."

Due to such letters, the Committee instructed Goggin to reach an accommodation with the opponents. Also, the committee ignored and refused to accept Goggin's letter of June 5, 1979.

The committee reconsidered the bill with the last four amendments proposed and passed it, as did the Senate and the Assembly.

On September 26, 1979 Section 1, Article 3.5 was added to Chapter 2 of Division 3 of the Labor Code in the form set forth in Vol. 5, No. 1 (Winter, 1980) of this publication.

In summary form, an employee executing an invention contract on or after January 1, 1980, may retain title to any invention which meets either of the following requirement patterns:

1. No equipment, supplies, facilities, or trade secret information of the employer was used;

2. The employee "developed" it entirely on his own time;

AND

Either 3A. The invention does not relate to the employer's business or the employer's actual or demonstrably anticipated research and development;

Or 3B. The invention does not result from any work performed by the employee for the employer.

Also the statute requires that post-January 1, 1980 contracts inform the employee that the contract does not apply to inventions that qualify under these patterns.

The final question remains as to what effect the new statute has on employment contracts that require the assignment of inventions and that were entered into prior to January 1, 1980. The statute purports to make contract requirements which are contrary to its provisions void and unenforceable. No distinction is made between pre- and post-January 1, 1980 employment agreements.

However, in this writer's opinion, the statute cannot be interpreted to void assignment provisions of employment agreements entered into before January 1, 1980 since a statute may not be applied retroactively due to constitutional restraints on the legislature (see *Union Oil Co. v. Moesch*, 88 Cal. App. 3d 72).

However, most employers will not interpret pre-1980 agreements beyond the scope of the statute in order to avoid litigation and/or bad employee relations. Also, courts will try to avoid the constitutional issue, perhaps by some drastic technique such as finding "unclean hands."

Hopefully, little or no litigation will be needed under the law and it will simply serve as a public policy statement for the equitable employment relationship of California inventors. . .

Nguyen Exh. C p. 10



• MAKING OLD MACHINES NEW • SELLING TO THE SOVIETS • RAILROAD POWER •

# TechnologyReview

EDITED AT THE MASSACHUSETTS INSTITUTE OF TECHNOLOGY      FEB/MAR 1984      $3.00

R$_x$ for
Nuclear
Power

Nguyen Exh. C p. 11

**FORUM**

BY ROBERT A. SPANNER

# Trade Secrets versus Technological Innovation



THE United States is on the cutting edge of the world's transformation from capital-based to information-based economies. Now, more than ever, new technology rather than capital formation is the driving force behind American economic activity and growth. The rate of technological change is also one of the principal determinants of our ability to compete in world markets. Technological innovation has thus become a matter of public interest and national policy.

In the United States, most technological innovation has historically been generated by the small entrepreneurial firm. And of course, the most fertile sources of entrepreneurs are the ranks of other companies in the same industry. Not many new ventures will succeed—or be funded—without managers experienced in the trade they are proposing to enter. So any significant restraint upon the flow of employees into new ventures could curtail the rate of innovation in this country.

Consider, for example, the founding of Intel. Robert Noyce and Gordon Moore, then executives at Fairchild Semiconductor, Inc., had difficulty interesting top management in large-scale integration, a technology for putting thousands of transistors on a single computer chip. So they founded Intel and developed the RAM high-density memory chip, which started the process toward miniaturized chips and significantly changed the world's technological landscape. Had the mobility of these entrepreneurs been obstructed, a significant technological development would have been delayed.

But today entrepreneurs have to run a legal gauntlet that was not of such concern to their predecessors. The use of nondisclosure agreements between employee and employer, designed to prevent the distribution of information, is becoming more prevalent. Furthermore, such contracts are being enforced more aggressively. These agreements, together with the threat of litigation they represent, could seriously hobble the rate of technological innovation in the United States.

## The Trade-Secret Tightrope

Despite sensational cases such as the recent IBM-Hitachi litigation, most disputes over trade secrets are prosaic affairs between corporations and their former employees. These cases, which often arise when an entrepreneur uses information acquired during former employment, can occur under one of three circumstances. First, the departing employee passively receives and uses proprietary information that she or he had no hand in developing. Second, both employer and employee contribute substantially in developing a technological innovation. And third, the proprietary information is mainly the product of the employee's own initiative, creativity, and diligence, with the employer as the passive recipient.

No one would seriously contend that employees have the right to walk off and use trade secrets conferred upon them in confidence, no matter how much that might promote entrepreneurial activity. Without legal protection against such conduct, many companies might well regard research and development as futile. Moreover, this kind of conduct offends basic notions of morality and fair play. Even in the second situation, where employer and employee have each contributed substantially to the development of an innovative device or process, a good argument can be made against an employee's use of proprietary information. A company, by virtue of having expended perhaps millions of dollars on an R&D, ought to

have a claim to the information superior to that of any individual contributor.

But consider the third case, where employees, by dint of their own initiative, and perhaps even over the opposition of their employers, design some significant technological advance. Should those employees be foreclosed from using the development, or the information inherent in it, which they alone have brought into being? Suppose further that the employer declines to market the employee's discovery, either because the company believes it will not be technologically feasible or economically viable, or because discovery threatens the corporation's investment in its existing product line. Should employees be prevented from using their own handiwork, even if that would result in the suppression of the technology altogether?

Consider another thorny issue in trade-secret law. Many companies require their employees to assign to the firm all rights to ideas, inventions, and discoveries they conceive of during their employment. But what if employees have ideas for a product or process to which their corporate employers refuse to dedicate resources? Should these agreements foreclose those employees from all opportunity to pursue their ideas on their own?

Courts throughout the country have been struggling with questions such as these for the last two decades and longer. Although no consensus has emerged, the potential for trade-secret rulings to adversely affect entrepreneurial activity is clearly substantial. In one example, a geologist employed by Chevron Oil Co. had developed a theory that indicated the existence of oil in a particular geological formation. He repeatedly urged Chevron to drill in accordance with his theory, but his superiors remained unconvinced. Frustrated with Chevron's inaction, the geologist resigned, took out oil leases in the subject area, and negotiated a drilling contract. But Chevron brought suit and the court shut him down, ruling that his theory was Chevron's trade secret.

In a similar case, when two employees of a manufacturer of tennis-ball machines conceived of a design for a smaller, lighter, and cheaper machine, management showed no immediate enthusiasm for the idea. The employees then set up their own company to manufacture the machine. Even though the company didn't plan to develop its own tennis-ball machine along the lines suggested, the company sued its former employees for misappropriation of trade secrets. Once again, the court ruled in the company's favor, requiring the employees to assign all their rights to the machine to their former employer.

## The Exception That Swallows the Rule

Some legal decisions do hold that employers have the exclusive right to all ideas, theories, and information relating to discoveries or developments that employees create essentially on their own. But more recent cases indicate a trend toward conferring on both employer and employee an equal right to use information primarily developed by the employee. However, most companies require employees to sign away that right in a nondisclosure and confidentiality agreement.

In the early 1970s, for instance, two employees of Structural Dynamics Research Corp., an Ohio engineering-sciences firm, developed a computer program for the structural analysis of buildings that was superior to anything then on the market. These employees formed a new company and developed a similar program. The court ruled unequivocally that the employees had the right to use the program for their own purposes: "If the subject matter of the trade secret is brought into being because of the initiative of the employee in its creation, innovation or development, even though the relationship is one of confidence, no duty [of nondisclosure] arises since the employee may then have an interest in the subject matter at least equal to that of his employer, or in any event, such knowledge is a part of the employee's skill and experience."

However, the judge carved out an exception that will, in most instances, swallow the rule. The employees had signed detailed nondisclosure agreements. Therefore, the court held that they could not use the fruits of their own creativity, because "the agreements not to disclose confidential information ... do not exclude information, technology or knowledge which the employee himself discovers, develops or contributes."

In addition to a nondisclosure provision, employment agreements also usually contain an invention-assignment provision, which is even more troublesome from the perspective of new-venture formation. These agreements require employees to assign their rights to all

inventions and discoveries "conceived of" during employment to the firm. This could expose a venture to a lawsuit not only for any product developed during the principals' former employment, but for any product *thought of* during employment.

Admittedly, the courts have not been eager to enforce such provisions, and have used a variety of strategies to avoid their effect. For example, an Oklahoma court recently construed an invention-assignment provision to cover patents only, even though the agreement was not so limited. Other judges have been less subtle, simply deciding cases in the teeth of the facts. For example, one Illinois federal court judge ruled that the fact that an employee had roughed out some sketches for a machine to spread rock chips in road construction just days after he quit his job did not show that he had actually conceived of the design during employment. Another court ruled that a new-product proposal submitted by an employee was not covered by an assignment clause, because a similar product was already on the market.

Although such rulings might benefit an employee in a particular case, they do nothing to address the overall inhibiting effect of invention-assignment clauses on the thousands of employees who have signed them. Moreover, as beneficial as a judicial sleight-of-hand may seem for promoting innovation, it is a little unseemly for courts to be depriving companies of their contractual rights by distorting the terms of an agreement. Furthermore, judges can go only so far in stretching the terms of an agreement before they begin to feel uncomfortable.

A Legislative Solution

The social dilemmas posed by invention-assignment and confidentiality agreements are too important to be resolved on an arbitrary case-by-case basis. Moreover, the courts are not equipped to deal with the conflicting policy questions raised by such agreements. The potential effects of these agreements upon employee mobility, new-venture formation, and the rate of technological innovation clearly mandate systematic study and legislative resolution. A few states have adopted statutes barring employers from controlling the rights to inventions that do not relate to an employee's job responsibilities. A bill with similar provisions has also been introduced in the U.S. Congress. Unfortunately, such legislation is of little help to the vast majority of entrepreneurs who are only qualified to found enterprises that relate directly to their prior job experience.

As a society, we may conclude that certain types of contractual restraints on the use of employee-developed information are contrary to our national interest and should not be enforced by the courts. On the other hand, we may decide that all contractual restraints should be vigorously enforced in the interest of promoting R&D by established companies. In that case, the courts should stop trying to mitigate the effects of strict employer-employee agreements by creative interpretation. In either event, we should not stand back and allow our gifted employees to be put in a legal straitjacket without considering the economic and social consequences. We should anticipate a problem for once, instead of reacting once it becomes a crisis. □

*ROBERT A. SPANNER is a trial lawyer in Palo Alto, Calif., specializing in trade-secret litigation. He is the author of* Who Owns Innovation? The Rights and Obligations of Employers and Employees *(Dow-Jones-Irwin, forthcoming).*

Nguyen Exh. C p. 14

LAW OFFICES OF

# BECKFORD, SPANNER & KELLEY

A PROFESSIONAL CORPORATION

JOSEPH G. BECKFORD
ROBERT A. SPANNER
JAMES F. KELLEY
ARNE D. WAGNER
CYNTHIA WATERS

TWO EMBARCADERO PLACE
2200 GENG ROAD
PALO ALTO, CA 94303
(415) 856-8000

OF COUNSEL
ROBERT L. ANDERSON

March 22, 1984

Jerald Rosenblum, Esq.
Rosenblum, Parish & Bacigalupi
55 Almaden Boulevard
San Jose, CA 95113

Martin C. Fliesler
Fliesler, Dubb, Meyer & Lovejoy
4 Embarcadero Center
Suite 1740
San Francisco, CA 94111

James Pooley, Esq.
Mosher, Pooley, Sullivan &
  Hendren
525 University Avenue,
Suite 1410
Palo Alto, CA 94303

Jay Dratler, Esq.
Fenwick, Stone, Davis
  & West
2 Palo Alto Square
Palo Alto, CA 94303

Alan T. Foster, Esq.
American Electronics
  Association
2680 Hanover Street
Palo Alto, CA  94304

Stan Wieg, Esq.
Office of the Legislative
  Representative
1210 K Street
Sacramento, CA  95814

Gentlemen:

I am writing to urge a recommendation to the AEA that SB 1457 be substantially redrafted, and rejected outright in its present form.

The bill was not drafted by Senator Lockyer's own staff; it was submitted by the State Bar, purportedly to clarify that Labor Code Section 2870 does apply to assignments of inventions and discoveries whether or not the inventions and discoveries are patentable or copyrightable.  I have no problem with the intendment of the bill; it is a reasonable amendment.

But the bill in fact does much more.  For the first time it defines "inventions" to include "ideas", so that an employee could be required to assign to his employer rights to all ideas and conceptions he has during the course of his employment which relate to his employment, even if he performs no development work whatever in relation to them, and even if the ideas pertain to nothing he is ever assigned to work on.

This is a particularly appropriate year to introduce such legislation, for the bill is truly Orwellian in effect; the only

difference is that instead of Big Brother, we will have placed thought control in private hands.  The Legislature should not be in the business of allocating rights in intangible thoughts and ideas in the minds of individuals.

Outside of these philosophical objections, the bill would substantially impede innovation.  Gordon Moore and Robert Noyce, for example, who conceived of the idea of large scale integration while at Fairchild, could never have formed Intel had they been subject to an invention assignment agreement authorized by SB 1457.  Employees found new companies every day based on technical or product ideas which occurred to them in prior employment; SB 1457 could bring new venture formation to a standstill.

Nor would the practical effect of SB 1457 be limited to its impact on entrepreneurship.  Employers could significantly restrain competition by bringing suits against competitors who had hired their former employees, claiming that new products, processes and the like were predicated on ideas conceived of in their former employment; see, e.g., Amoco Production Co. v. Lindley 609 P.2d 733; Koehring Co. v. E. D. Etnyre & Co., Inc., 254 F.Supp. 334; Armorlite Lens Company v. Campell, 340 F.Supp. 273.

Courts throughout the country have been hostile to idea assignment clauses.  Judge Will in the Northern District of Illinois, for instance, was moved to write that such provisions do not "give an employer a mortgage on all thoughts occurring to the employee", and he ridiculed the notion "that an employee, upon terminating his employment, must search his mind for all thoughts relating to the business of his employer and set these donw for the employer's reference, and that thereafter, he is forever precluded form employing such thoughts in a competitive enterprise..." Koehring Co. v. E. D. Etnyre & Co. Inc., supra.

A court would presently be free to invalidate an excessive idea assignment clause as an unlawful restraint of trade or as contrary to public policy; see, e.g., Armorlite Lens Co. v. Calhoon, 309 F. Supp. 762.  But passage of SB 1457 would be declarative of the public policy of the State, and such provisions would have to be enforced.

I believe that the Subcommittee should recommend that the AEA oppose SB 1457 in its present form.

Very truly yours,

Robert A. Spanner

RAS:igb

BCC: GREG SCHMIDT ✓

AMENDED IN SENATE MARCH 26, 1984

# SENATE BILL                    No. 1457

### Introduced by Senator Lockyer

### January 24, 1984

An act to amend Section 2870 of the Labor Code, relating to employee inventions.

LEGISLATIVE COUNSEL'S DIGEST

SB 1457, as amended, Lockyer.   Employee inventions.

Existing law provides that any provision in an employment agreement which provides that an employee shall assign or offer to assign any of his or her rights in an invention to his or her employer shall not apply to an invention which meets specified conditions.

This bill would, in addition, define the term "invention" for these purposes to mean ideas, creations, and innovations in which there may be a property right, whether or not it is patentable or copyrightable under the laws of the United States.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1    SECTION 1. Section 2870 of the Labor Code is
2  amended to read:
3    2870.   (a) As used in this article, "invention" means
4  ideas, creations, and innovations in which there may be
5  a property right, whether or not it is patentable or
6  copyrightable under the laws of the United States.
7    (b) Any provision in an employment agreement
8  which provides that an employee shall assign or offer to
9  assign any of his or her rights in an invention to his or her

Nguyen Exh. C p. 17    98   50

SB 1457                           — 2 —

1  employer shall not apply to an invention for which all of
2  the following are true:
3      (1) No equipment, supplies, facility, or trade secret
4  information of the employer was used.
5      (2) It was developed entirely on the employee's own
6  time.
7      (3) It does not relate to the business of the employer
8  or to the employer's actual or demonstrably anticipated
9  research or ~~development, or it~~ *development.*
10      *(4) It* does not result from any work performed by the
11  employee for the employer.
12      (c) Any provision which purports to apply to such an
13  invention is to that extent against the public policy of this
14  state and is to that extent void and unenforceable.

O

# SENATE COMMITTEE ON INDUSTRIAL RELATIONS

## SENATOR BILL GREENE, CHAIRMAN

─────────────── staff analysis

**1983-84 Regular Session**

FISCAL:  NO

URGENCY:  NO

SENATE BILL 1457 (LOCKYER)
As Amended March 26, 1984

S
B

1
4
5
7

SUBJECT:  Employee inventions.

HISTORY:

Source:  Alameda County Bar Association.

Prior Legislation:  None.

SUPPORT:  The Alameda County Bar Association; Crown Zellerbach.

OPPOSITION:  No known.

PURPOSE:

To clarify existing law with respect to rights of employees to maintain ownership of inventions that were developed on their own time and with their own resources.

ANALYSIS:

Existing law makes inoperable provisions of employment agreements which require employees to relinquish rights to employers for inventions under specific conditions.  However, the scope and application of this provision is unclear due to the lack of a definition of "inventions" and the manner in which the conditions are set forth.

This bill defines inventions to mean "ideas, creations and innovations in which there may be a property right, whether or not it is patentable or copyrightable under laws of the United States."

It also restructures existing law so that an employee retains all rights to an invention only when all of the following conditions are true:

   1.  It did not involve the use of the employer's equipment, supplies, facilities or trade secret information.

Senate Bill 1457 (LOCKYER)
Page 2

   2.   It was developed entirely on the employee's own time.

   3.   It does not relate to the business of the employer or to the employer's research or development activities.

   4.   It does not result from any work performed by the employee for the employer.

<u>COMMENTS</u>:

   1.   The lack of a definition of an "invention" has reportedly led to disagreement over the scope of the law, with some employers arguing that it is limited to patentable items.  Such a construction would exclude, for example, computer software programs which are not currently patentable.

   2.   The uncertainty over the application of this law stems from the complicated combinations of "and" and "or" subparts that are stated in the double negative.  The confusion is basically over whether an employee can be required to assign to the employer his/her right to an invention which either (a) does not relate to the employer's business or research and development activities or (b) does not result from work performed for the employer, or whether <u>both</u> these factors must be shown by an employee claiming rights to an invention.  This bill resolves the uncertainty by requiring both factors to be proved by the employee.

3/26/84
Consultant:  Neil Burraston
Senate Industrial Relations Committee

Nguyen Exh. C p. 20

 **California Manufacturers Association**

The Hotel Senator Building    1121 L Street, Suite 900    P.O. Box 1138    Sacramento, CA 95805    (916) 441-5420

March 29, 1984

The Honorable Bill Lockyer
Member, California State Senate
State Capitol, Room 4081
Sacramento, CA  95814

                              RE:  SB 1457
                              Employee Inventions

Dear Bill:

     Thank you for your consideration and for
accommodating our concerns.

                              Sincerely,

                              MICHAEL J. BREINING
                              Legal Counsel

MJB:gb

cc:  Gregory Schmidt

*The voice of California industry for over 66 years*

Nguyen Exh. C p. 21

Amendments to Senate Bill No. 1457


Amendment 1

On page 2, strike out lines 7 through 9 and insert:

(3) It does not relate to any element of the employer's business or actual or demonstrably anticipated research or development in which the employee was directly or indirectly involved.

AMENDED IN SENATE APRIL 4, 1984

AMENDED IN SENATE MARCH 26, 1984

## SENATE BILL  No. 1457

Introduced by Senator Lockyer

January 24, 1984

An act to amend Section 2870 of the Labor Code, relating to employee inventions.

LEGISLATIVE COUNSEL'S DIGEST

SB 1457, as amended, Lockyer. Employee inventions.

Existing law provides that any provision in an employment agreement which provides that an employee shall assign or offer to assign any of his or her rights in an invention to his or her employer shall not apply to an invention which meets specified conditions.

This bill would, in addition, define the term "invention" for these purposes to mean ideas, creations, and innovations in which there may be a property right, whether or not it is patentable or copyrightable under the laws of the United States, and would revise the specified conditions.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1  SECTION 1. Section 2870 of the Labor Code is
2  amended to read:
3  2870. (a) As used in this article, "invention" means
4  ideas, creations, and innovations in which there may be
5  a property right, whether or not it is patentable or
6  copyrightable under the laws of the United States.
7  (b) Any provision in an employment agreement

SB 1457 — 2 —

1  which provides that an employee shall assign or offer to
2  assign any of his or her rights in an invention to his or her
3  employer shall not apply to an invention for which all of
4  the following are true:
5    (1) No equipment, supplies, facility, or trade secret
6  information of the employer was used.
7    (2) It was developed entirely on the employee's own
8  time.
9    ~~(3) It does not relate to the business of the employer~~
10 ~~or to the employer's actual or demonstrably anticipated~~
11 ~~research or development.~~
12   *(3) It does not relate to any element of the employer's*
13 *business or actual or demonstrably anticipated research*
14 *or development in which the employee was directly or*
15 *indirectly involved.*
16   (4) It does not result from any work performed by the
17 employee for the employer.
18   (c) Any provision which purports to apply to such an
19 invention is to that extent against the public policy of this
20 state and is to that extent void and unenforceable.

O

CONSENT

| SENATE DEMOCRATIC CAUCUS | |
|---|---|
| **SENATE**<br>**DEMOCRATIC CAUCUS**<br><br>SENATOR PAUL B. CARPENTER<br>Chairman<br>SENATOR RALPH C. DILLS<br>Vice Chairman | Bill No.: SB 1457 Amended: 4/4/84<br><br>Author:   Lockyer (D)<br><br>Vote Required:  Majority<br><br>Assembly Floor Vote: |

SUBJECT:    Employee inventions

POLICY COMMITTEE:    Industrial Relations

   AYES:  (7)   Leroy Greene, Lockyer, Petris, Rosenthal, Russell, Royce,
               Bill Greene

   NOES:  (0)

SUMMARY OF LEGISLATION:

Existing law makes inoperable provisions of employment agreements which require
employees to relinquish rights to employers for inventions under specific condi-
tions.  However, the scope and application of this provision is unclear due to
the lack of a definition of "inventions" and the manner in which the conditions
are set forth.

This bill defines inventions to mean "ideas, creations and innovations in which
there may be a property right, whether or not it is patentable or copyrightable
under laws of the United States."

It also restructures existing law so that an employee retains all rights to an
invention only when all of the following conditions are true:

1.  It did not involve the use of the employer's equipment, supplies, facilities
    or trade secret information.

2.  It was developed entirely on the employee's own time.

3.  It does not relate to any element of the employer's business or actual or
    demonstrably anticipated research or development in which the employee was
    directly or indirectly involved.

4.  It does not result from any work performed by the employee for the employer.

FISCAL EFFECT:    None

PROPONENTS:    (Verified by author's office 3/30/84)

The Alameda County Bar Association (sponsor)
Crown Zellerbach
San Diego County Employees' Association

CONTINUED

Nguyen Exh. C p. 25

SB 1457
Page 2

OPPONENTS:
---

ARGUMENTS IN SUPPORT:

Proponents state that the lack of a definition of an "invention" has reportedly led to disagreement over the scope of the law, with some employers arguing that it is limited to patentable items.  Such a construction would exclude, for example, computer software programs which are not currently patentable.

The roll was called and the bill passed by the following vote: AYES were Senators Alquist, Walters, Beverly, Bergeson, Boatwright, Campbell, Craven, Davis, Dills, Doolittle, Foran, Garamendi, Green, Greene, Hart, Johnson, Keene, Lockyer, Leroy, Mills, Montoya, Nielsen, Petris, Presley, Robbins, Roberti, Rosenthal, Royce, Russell, Seymour, Speraw, Sher, Torres, Vuich, and Watson. NOES (0) - None.
Bill ordered transmitted to the Assembly.

*4-12-84*                                        *p. 9447*

CK:gaw 4/3/84

International Business Machines Corporation

5600 Cottle Road
San Jose, California 95193

April 13, 1984


The Honorable William Lockyer
Room 5100
State Capitol Building
Sacramento, California   95814

Dear Senator Lockyer:

Re:  SB1457 (to amend Section 2870 of the Labor Code
              relating to employee inventions)

IBM favors enactment of SB1457, as amended on March 26, 1984, but
opposes the bill as thereafter amended on April 4, 1984.

IBM is the third largest employer in Santa Clara County.  It has a
research laboratory, three hardware and software development
laboratories and two scientific centers, as well as many offices and
branches, in the State of California.  IBM confidential information must
be disseminated among IBM employees throughout the world, and there is
considerable visitation between locations in connection with the conduct
of IBM's business.  SB1457, as amended on April 4, 1984, would impose
unreasonable and undesirable restraints on the conduct of the business
of IBM and other major employers in the State of California.

The concern which this latest amendment seeks to address was carefully
considered and rejected at the time of enactment of the current statute
in 1979.  The mischief it could create, if enacted, is capably
summarized in an article entitled, "Employment-Invention Contracts, A
History of California Code Sections 2870-2892" by J. B. McGuire in the
California State Bar Journal (copy attached, pertinent portions
highlighted).  To further illustrate the confusion the bill in its
present form would create, consider the following:  An IBM employee
based outside California makes an invention while in California, or a
California-based IBM employee makes an invention while outside
California.  Who would have title to the invention, assuming all
criteria of the bill as amended on April 4, 1984 were met?

In addition, in the bill as amended on April 4, 1984 it is not clear
what is meant by "indirectly involved".  Differing interpretations of
this expression under a variety of fact situations will give rise to
disagreements that could result in numerous law suits.

If the bill as amended is intended to exclude inventions by
non-technical employees (such as janitors or secretaries), we submit
that it proposes a solution to what is not a real problem.

Senator Willi␣ ␣ockyer                2                    April 13, 1984

IBM respectfully solicits your reconsideration of SB1457 in light of the
foregoing and your assistance in restoring it to conform to SB1457 as
amended on March 26, 1984 by amending paragraph (3) to read:

> "(3) It does not relate to the business of the employer or to the
> employer's actual or demonstrably anticipated research or
> development."

Sincerely,

R. S. AbuZayyad
Vice President and General Manager

RSA:HEO,Jr./fc

cc:  Mr. Stanley Weig, California State Bar, Office of Legislative
         Affairs
     Mr. Michael Breining, California Manufacturers Association

# GENERAL ⊛ ELECTRIC

NUCLEAR ENERGY BUSINESS OPERATIONS
GENERAL ELECTRIC COMPANY ● 175 CURTNER AVENUE ● SAN JOSE, CALIFORNIA 95125
NUCLEAR ENERGY PATENT OPERATION   M/C 822   (408) 925-2707

RECEIVED
MAY 0 4 1984

April 27, 1984
IJJ-118-84

The Honorable William Lockyer
Room 5100
State Capitol Building
Sacramento, CA 95814

Re:  SB 1457, Amending Labor
     Code Section 2870;
     Employee Inventions

Dear Senator Lockyer:

This is to advise that General Electric Company supported and continues to support enactment of SB 1457 as amended in Senate March 26, 1984, but cannot support and herewith expresses its opposition to it as amended in Senate April 4, 1984.

As amended April 4, 1984, the proposed Sub-Section 2870(b)(3) was revised as follows (with [deletions] and additions shown):

> "(3) It does not relate to [the] any element of the employer's business [of the employer] or [to the employer's] actual or demonstrably anticipated research or development in which the employee was directly or indirectly involved, [or]"

General Electric Company's objection is primarily based on the addition of the phrase "in which the employee was directly or indirectly involved." In multi-component businesses such as ours, large numbers of individual activities are conducted simultaneously by numerous technically-trained employees.  These individuals constantly consult with one another respecting problems and developments with which they are dealing.  Proprietary information of the Company is readily and extensively communicated among these employees and among different organizational components in support of those activities.  The communication occurs through very diverse mechanisms, ranging from carpool and lunch table conversations to elaborate intra Company electronic transmissions of full texts.  Establishing under such circumstances whether or not a given employee inventor was "directly or indirectly involved" in an element of the employer's business would seem to

Nguyen Exh. C p. 29

**GENERAL ⬤ ELECTRIC**

The Honorable William Lockyer
April 27, 1984
Page 2

be extraordinarily difficult if not impossible, especially after the passage
of some time.  The proposed (April 4, 1984) amendment of California Labor
Code Sub-Section 2870(b)(3) would therefore throw into great doubt the
ownership of significant inventions arising in our work and in the work of
other California employers similarly situated.

    We strongly recommend that the SB 1457 be revised to restore the language
of March 26, 1984.

                              Yours very truly,

                              Ivor J. James, Jr.
                              Patent Counsel-NEBO

IJJ/ci

cc:  Mr. Michael Breining
     California Manufacturers Association

     Mr. Stanley Weig
     California State Bar,
     Office of Legislative Affairs

**American Electronics Association**  

2670 Hanover Street
P.O. Box 10045
Palo Alto, California 94303

(415) 857-9300

May 3, 1984

The Honorable Bill Lockyer
California State Senate
State Capitol
Sacramento, CA  95814

Dear Senator Lockyer:

The American Electronics Association has reviewed the present version of SB 1457 and must oppose the measure.

As introduced, SB 1457 provided a helpful clarification of the term "invention" in the Labor Code as it pertains to the activities of employees. In fact, a member of AEA's Lawyers Committee, Jerry Rosenblum, submitted some of his own input on how the measure could be further improved.  It appeared that the bill would be amended in Senate Industrial Relations Committee to reflect those suggestions; however, this was not done.

AEA has serious concerns regarding SB 1457 because of the amendments adopted in Industrial Relations Committee.  Specifically, the revision to Labor Code Section 2870 (b)(3) is a significant departure from current law and drastically reduces the protections offered by Section 2870.

Currently, electronics employees involved in inventive activity are encouraged to cross-fertilize ideas.  The amendment to Subsection (b)(3) would seriously inhibit this kind of open communication, for employers would run the risk of losing ownership to an employee making an invention outside of his or her assigned job responsibility.

We appreciate the opportunity to express our concerns on this issue.

Sincerely,

Alan T. Foster
Manager, State
Government Affairs

cc:  Grant Kenyon
     Legislative Representative

     Stan Wieg, State Bar

     Neil Burraston, Consultant
     Senate Industrial Relations Committee

Nguyen Exh. C p. 31



**THE STATE BAR**
**OF CALIFORNIA**

OFFICE OF LEGISLATIVE AFFAIRS

1100 ELEVENTH STREET, SUITE 315, SACRAMENTO, CALIFORNIA 95814      (916) 444-2762

May 24, 1984

The Honorable Richard E. Floyd, Chair
Assembly Labor & Employment Committee
Assembly Member, 53rd District
State Capitol, Room 3091
Sacramento, CA  95814

Dear Assembly Member Floyd:

          RE:  SB 1457 (Lockyer) - Employee Inventions

The State Bar respectfully urges your support for SB 1457, which is
sponsored by the Bar.

The bill essentially says that if an employee develops an invention
completely on his own and unrelated to his work, it cannot be
claimed by his employer.

The bill is simple in concept, but requires some history to place it
in context.  It has been the practice of many employers, particu-
larly in the "high-tech" fields, to exact from employees very
stringent assignment of invention agreements as part of an employ-
ment contract.  Such assignment agreements typically go considerably
further than the common law.  Often they give the employer ownership
of every idea the employee ever has while working for the company,
even if he thought it up completely on his own.  Also, such agree-
ments are often applied to every employee from janitor to bookkeeper
to research engineer.

In 1979 Section 2870 was added to the Labor Code, making invention
assignment agreements inapplicable when an invention:

     a)  was made without use of any employer resources,

     b)  was not made on company time, and

     c)  <u>either</u> was not related to the business or research
         <u>of the</u> employer, or

         was not the result of any work done for the employer.

SB 1457 will refine Section 2870 in two ways.  First, the definition
of invention is broadened so as to include more than just patentable
items, in particular computer software.  This proposed change
(Section 2870a) is not opposed.

Nguyen Exh. C p. 32

The Honorable Richard E. Floyd
May 24, 1984
Page 2


Second, the wording of the statute will be subdivided to make clear
the alternative nature of point "c" above.  The statute would thus
state that the employee doesn't lose the invention if the invention
was made completely without company resources, was not worked on
during company time, and was not the result of any work done for the
employer, even if the company has other employees working in a
related area.

This alternative reading of the third requirement is crucially
important.  Literally every company in the high-tech field is
working in some way on software design.  It would effectively
destroy the effect of the statute to require that the invention also
be completely unrelated to any business of the employer.

We believe that SB 1457 will prevent inequities perpetrated on
employees and maintain entrepreneural activity in this volatile but
vital field.  I urge your "aye" vote.

Sincerely,

Stanley M. Wieg
Legislative Representative



SMW:tlh

cc:  The Honorable Johan Klehs
     The Honorable Art C. Agnos
     The Honorable Charles W. Bader
     The Honorable Bill Jones
     The Honorable Burt Margolin
     The Honorable Alister McAlister
     The Honorable Gloria Molina
     The Honorable Gwen Moore
     The Honorable Eric Seastrand
     The Honorable Sally Tanner
     The Honorable Phillip D. Wyman

12  (3) (i) It does not relate (1) to the business of the employer or
13  (2) to the employer's    tual or demonstrably anti  pated research
14  or development, or (b) which (ii) it does not result from any work
15  performed by the employee for the employer.  Any provision which
16  purports to apply to such an invention is to that extent against
17  the public policy of this state and is to that extent void and
18  unenforceable.

(Proposed new language underlined;
language to be deleted stricken)

PROPONENT Alameda County Bar Association

STATEMENT OF REASONS
The public policy behind the original enactment of this statute is
to encourage individual creativity and technological innovation, the
basis for the high technology industries which provide a strong econ-
omy to California.

This amendment is proposed to clarify the meaning of invention and
the circumstances under which this statute shall apply.  Employers
generally, none too happy with this departure from prior law, have
sought to limit it to patentable items.  The key to the computer
industry, in which California is a world leader, is "software," or
computer programs, which to date are not patentable.

As now written, the statute permits high technology employers (or
any employer) to require assignment of software written by any em-
ployee, whether or not that employee has a job related to software
at all and no matter what the circumstances under which the software
was written, as a condition of employment, merely because software
is not patentable.

With this proposed change, it would be clear that the public policy
of California is to encourage individual creativity while respecting
the employer's rights to that which a person is employed to do.

A minor change has also been made where under the original drafting
it was unclear which conditions were required to be true to bring an
invention within this law.

This proposed amendment does not affect any other law, statute, or
rule outside of Article 35 of the Labor Code.  Two sections follow-
ing Section 2870 refer back to it and use the term "invention."

AUTHOR and/or PERMANENT CONTACT Robert B. Freedman

DELEGATION
POSITION: _____

ASSIGNED
TO: _____

CALLED UP FOR:   Limited              Full
                 Debate _____    Debate _____

ACTION OF THE
CONFERENCE: _____

1982 CONFERENCE              7-6b-82

Nguyen Exh. C p. 34

ASSEMBLY LABOR AND EMPLOYMENT COMMITTEE

ASSEMBLYMAN RICHARD E. FLOYD, CHAIRMAN

BILL NO.:  SB 1457

HEARING DATE: 5/29/84

SB 1457, Lockyer, As Amended April 4, 1984

**SUBJECT:**

Employee inventions.

**DIGEST:**

Existing law provides that an employment agreement requiring an employee to assign any rights in an invention to the employer shall not apply to an invention for which no equipment, supplies, or trade secret information of the employer was used, which was developed entirely on the employee's own time, and (1) which did not relate to the business of the employer or to the employer's actual or demonstrable research, or (2) which did not result from any work performed by the employee for the employer.

This bill clarifies existing law as follows:

1. Specifies that an invention means ideas, creations, or innovations in which there may be a property right, whether or not it is patentable or copyrightable under the laws of the United States.

2. Specifies that rights in an invention are not assignable if it does not relate to any element of the employer's business or actual or demonstrable anticipated research or development in which the employee was directly or indirectly involved and it does not result from any work performed by the employee for the employer.

**FISCAL EFFECT:**

None.

**STAFF COMMENTS:**

Existing law does not define the term "inventions" and it has been argued that existing law is limited to patentable inventions.  This bill clarifies that an invention means an idea, creation or innovation in which there may be a property right whether or not it is patentable or copyrightable.  Included

Nguyen Exh. C p. 35

within this definition would be computer software programs which
are not currently patentable.

CONSULTANT:  Stephen Holloway                    BILL NO.:  SB 1457

AMENDED IN ASSEMBLY JUNE 28, 1984

AMENDED IN SENATE APRIL 4, 1984

AMENDED IN SENATE MARCH 26, 1984

# SENATE BILL                                    No. 1457

## Introduced by Senator Lockyer

### January 24, 1984

An act to amend Section 2870 of the Labor Code, relating to employee inventions.

LEGISLATIVE COUNSEL'S DIGEST

SB 1457, as amended, Lockyer.   Employee inventions.

Existing law provides that any provision in an employment agreement which provides that an employee shall assign or offer to assign any of his or her rights in an invention to his or her employer shall not apply to an invention which meets specified conditions.

This bill would, in addition, define the term "invention" for these purposes to mean ideas, creations, and innovations in which there may be a property right, whether or not it is patentable or copyrightable under the laws of the United States, and would revise the specified conditions.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1    SECTION 1.  Section 2870 of the Labor Code is
2  amended to read:
3    2870.   (a) As used in this article, "invention" means
4  ideas, creations, and innovations in which there may be
5  a property right, whether or not it is patentable or
6  copyrightable under the laws of the United States.

SB 1457                          — 2 —

1    (b) Any provision in an employment agreement
2  which provides that an employee shall assign or offer to
3  assign any of his or her rights in an invention to his or her
4  employer shall not apply to an invention for which all of
5  the following are true:
6    (1) No equipment, supplies, facility, or trade secret
7  information of the employer was used.
8    (2) It was developed entirely on the employee's own
9  time.
10   ~~(3) It does not relate to any element of the employer's~~
11  ~~business or actual or demonstrably anticipated research~~
12  ~~or development in which the employee was directly or~~
13  ~~indirectly involved.~~
14   ~~(4)~~
15   *(3)* It does not result from any work performed by the
16  employee for the employer.
17   (c) Any provision which purports to apply to such an
18  invention is to that extent against the public policy of this
19  state and is to that extent void and unenforceable.

O

 **California Manufacturers Association**

The Hotel Senator Building   1121 L Street, Suite 900   P.O. Box 1138   Sacramento, CA 95805   (916) 441-5420

July 3, 1984

The Honorable Bill Lockyer
California State Senate
State Capitol, Room 4081
Sacramento, CA 95814

                              RE:   SB 1457 (Lockyer)
                                    Employee Inventions

Dear Bill:

   This letter is to inform you of our opposition to your bill,
SB 1457, as amended June 28.  This bill defines the term "inven-
tion" such that it will have significant harmful impact upon
employers who encourage employee creativeness and communication.

   The intended effect of SB 1457 is to merely include within
the meaning of "invention" those creations which may not be patent-
able, and we do not oppose this concept.  However, the bill precludes
a property right claim currently available to employers.  An example
should help clarify our concern.

   Many companies encourage their employees to socialize and
engage in the exchange of ideas and suggestions which will improve
the quality of work and working conditions.  One method is through
providing "car-pool" vehicles; another is by facilitating company
picnics or get-togethers.  If the exchange of ideas between co-workers
Joe and Ann leads to Ann's invention clearly within Joe's area of
research and development for their employer, who's invention is it?
Current law allows Ann and the employer to make this determination
among themselves or pursuant to the bargaining process.  SB 1457
will preclude any claim by the employer for this invention, which
may properly be the property of employer.  Further, such a law will
force the employer to discontinue those practices amenable to
creative and innovative technology in order to protect the product.

   This serious problem which puts in jeopardy the creative in-
stincts of our inventors can be solved by merely putting SB 1457
into the form as amended March 26.  Without such amendment, however,
we must adamantly oppose this bill.  We will be happy to work with
you to resolve this concern.

                              Sincerely,

                              MICHAEL J. BREINING
                              Legal Counsel

MJB:gb

cc:  Willie L. Brown, Jr., Speaker of the Assembly
     Members, California State Assembly

*The voice of California industry for over 60 years*

# BLANK PAGE

Artifact of Photocopy Reproduction

## JAN RAYMOND
### LEGISLATIVE HISTORY AND LEGISLATIVE INTENT
### 1 (888) 676-1947

**GENERAL ⊛ ELECTRIC**

NUCLEAR ENERGY BUSINESS OPERATIONS
GENERAL ELECTRIC COMPANY ● 175 CURTNER AVENUE ● SAN JOSE, CALIFORNIA 95125
NUCLEAR ENERGY PATENT OPERATION  M/C 822   (408) 925-2707

RECEIVED
JUL 19 1984
Ans'd...........

July 17, 1984
IJJ-192-84

The Honorable William Lockyer
Room 5100
State Capitol Building
Sacramento, CA  95814

Subject:  S.B. No. 1457 - Lockyer
Amending Labor Code Section
2870; Employee Inventions

Dear Senator Lockyer:

This is to advise that General Electric Company supported and continues
to support enactment of S.B. 1457 as amended in Senate March 26, 1984, but
cannot support and herewith expresses its opposition to the Bill as amended
in Senate June 28, 1984.

General Electric has, by letter to you dated April 27, 1984, also
expressed its opposition to this Bill as amended in Senate April 4, 1984,
a copy of which letter is attached for ready reference.  That opposition was
particularly directed to the phrase "in which the employee was directly or
indirectly involved" contained in proposed Sub-Section 2870(b)(3) as amended
April 4, 1984.  The June 28, 1984 version of the Bill removed that proposed
Sub-Section 2870(b)(3) entirely, including the reference to the relationship
of the employee's invention to the business or to the research and develop-
ment activity of the employer.  This deletion solves the "directly or indirectly
involved" problems, but it introduces another problem of at least equal if
not greater seriousness.

By eliminating the reference to relationship to the employer's business
or research and development, it would appear that the employee would own the
patent rights to inventions which relate to the employer's business or research
and development in cases such as the following situation.  Consider the skilled
(by technical education or experience) employee working at home on his/her
own time, which satisfies Paragraph (2); not doing employer-assigned work,
which satisfies Paragraph (3), but instead working on a subject which relates
to the employer's business or research and development and to which his/her
skill and interest apply; and not using any of the employer's equipment,
supplies, facilities, or trade secret information, which satisfies Paragraph
(1).  Under the June 28, 1984 version of this Bill, such an employee would

Nguyen Exh. C p. 41

## GENERAL 🄶🄴 ELECTRIC

The Honorable William Lockyer
July 17, 1984
Page 2

own the patents on important inventions even though using the employer's
non-trade secret information.  Such non-trade secret information would
include (1) information generally circulating among or given by the employer
to employees as to the general nature of the employer's business or its
research and development, but without proprietary detail provable as "trade
secret" information, (2) information learned from fellow employees as to
problems for which solutions are sought in another department, etc. etc.
Such ownership seems manifestly unfair to the employer and leads to disruptive
employer-employee controversy as to what information is or should be available
to employees, its status under applicable law defining trade secrets, etc.

The proposed (June 28, 1984) amendment of California Labor Code Sub-
Section 2870(b)(3) would therefore throw into great doubt the ownership of
significant inventions arising in General Electric's work and in the work
of other California employers similarly situated.  Most employers in the
so-called "high-technology" areas recognize that highly qualified, fully
informed and motivated employees are absolutely essential to the efficient
conduct of a competitive business.  Withholding information from or limiting
its availability to such employees and employer-employee controversies
respecting invention ownership are both highly counter-productive and are to
be avoided in every possible instance.

We strongly recommend therefore that S.B. 1457 be revised to restore
the language of March 26, 1984, and if it is not so revised General Electric
must for the reasons noted above oppose the Bill.

Yours very truly,

Ivor J. James, Jr.
Patent Counsel-NEBO

IJJ/ci

attachment



---

International Business Machines Corporation

5600 Cottle Road
San Jose, California 95193

RECEIVED
AUG 3 1984
Ans'd........

August 1, 1984

The Honorable William Lockyer
Room 5100
State Capitol Building
Sacramento, California 95814

Dear Senator Lockyer:

Re:  SB 1457 (to amend Section 2870 of the Labor Code
             relating to employee inventions)

IBM strongly opposes SB1457 as amended on April 4, 1984 and more
recently on June 28, 1984.  IBM specifically opposes the very broad
definition of "invention" as set forth in section 2870 (a), and requests
that SB1457 be withdrawn.

As previously noted in my letter to you of April 13, 1984, IBM is the
third largest employer in Santa Clara County.  It has research and
development laboratories, two scientific centers and many offices and
branches in the State of California.  For the orderly conduct of its
business, IBM proprietary information must be disseminated without undue
restriction among IBM employees throughout the world.  However, SB1457,
as amended on April 4, 1984 and June 28, 1984, would restrict the free
flow of information and impose unreasonable and undesirable restraints
on the conduct of the business of IBM and other employers in the State
of California.  If employers are compelled to restrict dissemination of
information to and between employees, it will inhibit, rather than
encourage, invention.

The current bill also imposes an unreasonable burden on employers.
Unless the employer can establish that knowledge of the subject matter
giving rise to the invention was in itself a trade secret, the invention
could be held to belong to an employee, assuming the other conditions of
SB1457 in its current form are met and no fraudulent conduct (such as
collusion between employees) is established.

Senator William Lockyer                    -2-                    August 1, 1984

Finally, it is not uncommon for companies to enter into license agreements under which they agree to grant licenses under all inventions made by their respective employees in a defined field during a defined period.  Such contractual obligations might not be met if SB1457 is enacted in its current form.

In view of the foregoing, IBM respectfully requests your assistance in withdrawing SB1457.

Sincerely,

R. S. AbuZayyad
Vice President and General Manager

RSA:HEO,Jr./bk

cc:  Mr. Michael Breining, California Manufacturers Association



**THE STATE BAR
OF CALIFORNIA**

OFFICE OF LEGISLATIVE AFFAIRS

1100 ELEVENTH STREET, SUITE 315, SACRAMENTO, CALIFORNIA 95814          (916) 444-2762

August 10, 1984

Greg Schmidt, Consultant
Senate Elections & Reapportionment
State Capitol, Room 4085
Sacramento, CA  95814

Re:  SB 1457 - Employee Inventions

Dear Greg:

Enclosed is a draft of potential fall back amendments for SB
1457.

Assuming Ms. Herring and the Senator approve, I think these
amendments would be much easier to pass than the existing bill.
As you can see, the bill (if amended) would simply state that
computer software is an "invention" within the meaning of B & P
§2078.  Such a "half a loaf" would solve our immediate problem
and allow us to dicker with the industry groups next session.

A Legislative Counsel draft will be ready Monday and could be
inserted by Assemblyman Goggin as soon as the bill is back on the
Third Reading File.

Sincerely,

Stanley M. Wieg
Legislative Representative

SMW:tlh

Enclosure

Amendments to SB 1457

As Amended June 28, 1984

## Amendment One

On page 1, strike lines 3 through 6, strike page 2 and insert:

2870.   Any provision in an employment agreement which provides that an employee shall assign or offer to assign any of his or her rights in an invention to his or her employer shall not apply to an invention for which no equipment, supplies, facility, or trade secret information of the employer was used and which was developed entirely on the employee's own time, and (a) which does not relate (1) to the business of the employer or (2) to the employer's actual or demon- strably anticipated research or development, or (b) which does not result from any work performed by the employee for the employer.   Any provision which purports to apply to such an invention is to that extent against the public policy of this state and is to that extent void and unenforceable.
For the purposes of this article "invention" includes computer software.

SB 1457

ASSEMBLY THIRD READING

SB 1457 (_____Lockyer_____) As Amended:  June 28, 1984

SENATE VOTE:  37-0

ASSEMBLY ACTIONS:

COMMITTEE_____L. & E._____VOTE__8-0__COMMITTEE_____VOTE_____

Ayes:                              Ayes:

Nays:                              Nays:

DIGEST

Current law provides that any provision in an employment agreement requiring an employee to assign his or her rights in an invention to his or her employer shall not apply to an invention for which no equipment, supplies, facility, or trade secret information of the employer was used and which was developed entirely on the employee's own time, and:

1)  Does not relate to the business of the employer or to the employer's actual or demonstrably anticipated research or development, or

2)  Does not result from any work performed by the employee for the employer.

Any provision in an employment agreement that purports to apply to such an invention is to that extent against state policy and void.

This bill revises the above provision of law and defines the term "invention" for the purpose of determining the scope of the law.  Specifically, the bill:

1)  Defines the term "invention" to mean ideas, creations, and innovations in which there may be a property right, whether or not it is patentable or copyrightable under the laws of the United States.

2)  Provides that any provision in an employment agreement requiring an employee to assign his or her rights in an invention to his or her employer shall not apply to an invention for which all of the following are true:

   a)  No equipment, supplies, facility, or trade secret information of the employer was used.

   b)  It was developed entirely on the employee's own time.

-continued-

ASSEMBLY OFFICE OF RESEARCH              SB 1457

Nguyen Exh. C p. 47

    c)  It does not result from any work performed by the employee for the employer.

3)  Specifies that any provision in an employment agreement that purports to apply to such an invention is to that extent against state policy and void.

FISCAL EFFECT

None

COMMENTS

The purpose of this bill is to clarify existing law regarding the rights of employees to maintain ownership and control of inventions that were developed on their own time and with their own resources.

The Senate Industrial Relations Committee analysis reports:

    1)  The lack of a definition of an "invention" has reportedly led to disagreement over the scope of the law, with some employers arguing that it is limited to patentable items.  Such a construction would exclude, for example, computer software programs which are not currently patentable.

    2)  The uncertainty over the application of this law stems from the complicated combinations of "and" and "or" subparts that are stated in the double negative.

Nguyen Exh. C p. 48

UNFINISHED BUSINESS

| **SENATE DEMOCRATIC CAUCUS**<br>SENATOR PAUL B. CARPENTER<br>Chairman<br>SENATOR RALPH C. DILLS<br>Vice Chairman | **Bill No.:** SB 1457 Amended: 6/28/84<br>**Author:** Lockyer (D)<br>**Vote Required:** Majority<br>**Assembly Floor Vote:** Pending |
|---|---|

SUBJECT:   Employee inventions

POLICY COMMITTEE:   Industrial Relations

AYES: (7)   Leroy Greene, Lockyer, Petris, Rosenthal, Russell, Royce, Bill Greene

NOES: (0)

SUMMARY OF LEGISLATION:

As it left the Senate:

Existing law makes inoperable provisions of employment agreements which require employees to relinquish rights to employers for inventions under specific conditions. However, the scope and application of this provision is unclear due to the lack of a definition of "inventions" and the manner in which the conditions are set forth.

This bill defines inventions to mean "ideas, creations and innovations in which there may be a property right, whether or not it is patentable or copyrightable under laws of the United States."

It also restructures existing law so that an employee retains all rights to an invention only when all of the following conditions are true:

1. It did not involve the use of the employer's equipment, supplies, facilities or trade secret information.

2. It was developed entirely on the employee's own time.

3. It does not relate to any element of the employer's business or actual or demonstrably anticipated research or development in which the employee was directly or indirectly involved.

4. It does not result from any work performed by the employee for the employer.

The Assembly amendments remove Item 3 above.

FISCAL EFFECT:   None

CONTINUED

SB 1457
Page 2

<u>PROPONENTS</u>:       (Verified by author's office 3/30/84--Unable to reverify at
the time of this writing)

The Alameda County Bar Association (sponsor)
Crown Zellerbach
San Diego County Employees' Association

<u>OPPONENTS</u>:
---

<u>ARGUMENTS IN SUPPORT</u>:

Proponents state that the lack of a definition of an "invention" has reportedly
led to disagreement over the scope of the law, with some employers arguing that
it is limited to patentable items. Such a construction would exclude, for exam-
ple, computer software programs which are not currently patentable.

**Roll Call**

The roll was called and the bill was passed by the following vote:

AYES (37)—Senators Alquist, Ayala, Beverly, Boatwright,
Campbell, Craven, Davis, Dills, Doolittle, Ellis, Foran, Garamendi,
Bill Greene, Leroy Greene, Hart, Johnson, Keene, Lockyer, Maddy,
Marks, McCorquodale, Mello, Montoya, Nielsen, Petris, Presley,
Robbins, Roberti, Rosenthal, Royce, Russell, Seymour, Sprraw,
Stiern, Torres, Vuich, and Watson.

NOES (0)—None.

Bill ordered transmitted to the Assembly.

*4-12-84*                                    *p. 9447*

ASSEMBLY VOTE NOT AVAILABLE AT TIME OF THIS WRITING

CK:gaw 8/7/84

Nguyen Exh. C p. 50

# SENATE REPUBLICAN CAUCUS
### SENATOR JOHN SEYMOUR, Chairman

PROPERTY OF
ASSEMBLY REPUBLICAN CAUCUS
LIBRARY

ASSEMBLY AMENDMENTS

POSITIONS:
SOURCE:   Alameda County Bar Association
SUPPORT:  Crown Zellerbach                                   BILL NUMBER:  SB 1457

                                                            AUTHOR:  Lockyer
OPPOSED:  CA Manufacturer's Assoc.
          (See Attachment)                          AMENDED COPY:  6/28/84
                                                       MAJORITY VOTE

---

Committee Votes:                     Senate Floor Vote:      4/12/84        pg. 9447



**Roll Call**

The roll was called and the bill was passed by the following vote:
AYES (37)—Senators Alquist, Ayala, Beverly, Boatwright, Campbell, Craven, Davis, Dills, Doolittle, Ellis, Foran, Garamendi, Bill Greene, Leroy Greene, Hart, Johnson, Keene, Lockyer, Maddy, Marks, McCorquodale, Mello, Montoya, Nielsen, Petris, Presley, Robbins, Roberti, Rosenthal, Royce, Russell, Seymour, Speraw, Stiern, Torres, Vuich, and Watson.
NOES (0)—None.
Bill ordered transmitted to the Assembly.

Assembly Floor Vote:

---

DIGEST

1   This bill defines inventions as ideas, creations and innovations in
2   which there may be a property right, whether or not patentable, and
3   specifies conditions for the application of code sections giving
4   employees rights to inventions.
5
6   Assembly Amendments delete the requirement that the invention not
7   relate to the employer's business.
8
9   FISCAL EFFECT:  Appropriation: no. Fiscal Committee: no. Local: no.
10
11  COMMENTS:
12
13  Existing law makes inoperable provisions of employment agreements
14  which require employees to relinquish rights to employers for
15  inventions under specific conditions.  However, the scope and
16  application of this provision is unclear due to the lack of definition
17  of "inventions" and the manner in which the conditions are set forth.
18
19  This bill defines inventions to mean "ideas, creations and innovations
20  in which there may be a property right, whether or not it is
21  patentable or copyrightable under laws of the United States."
22
23  It also restructures existing law so that an employee retains all
24  rights to an invention only when all of the following conditions are
25  true:
26
27      1.   It did not involve the use of the employer's equipment,
28           supplies, facilities or trade secret information.
29
30
31                                              NEXT PAGE
32

ANALYSIS CONTINUED:                    PAGE:     2     BILL NUMBER:     SB 1457

2.  It was developed entirely on the employee's own time.

3.  It does not result from any work performed by the employee for
    the employer.

The lack of definition of an "invention" has reportedly led to
disagreement over the scope of the law, with some employers arguing
that it is limited to patentable items.  Such a construction would
exclude, for example, computer software programs which are not
currently patentable.

The uncertainty over the application of this law stems from the
complicated combinations of "and" and "or" subparts that are stated in
the double negative.  The confusion is basically over whether an
employee can be required to assign to the employer his/her right to an
invention which either (a) does not relate to the employer's business
or research and development activities or (b) does not result from
work performed for the employer, or whether both these factors must be
shown by an employee claiming rights to an invention.  This bill
resolves the uncertainty by requiring both factors to be proved by the
employee.

8/8/84/AA/rp

AMENDED IN ASSEMBLY AUGUST 16, 1984

AMENDED IN ASSEMBLY JUNE 28, 1984

AMENDED IN SENATE APRIL 4, 1984

AMENDED IN SENATE MARCH 26, 1984

# SENATE BILL                    No. 1457

## Introduced by Senator Lockyer

### January 24, 1984

An act to amend Section 2870 of the Labor Code, relating to employee inventions.

LEGISLATIVE COUNSEL'S DIGEST

SB 1457, as amended, Lockyer.   Employee inventions.
Existing law provides that any provision in an employment agreement which provides that an employee shall assign or offer to assign any of his or her rights in an invention to his or her employer shall not apply to an invention which meets specified conditions.

This bill would, in addition, define the term "invention," for these purposes, to ~~mean ideas, creations, and innovations in which there may be a property right, whether or not it is patentable or copyrightable under the laws of the United States, and would revise the specified conditions~~ *include, but not be limited to, computer software.*

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1    SECTION 1. Section 2870 of the Labor Code is
2  amended to read:
3    2870. *(a)*  Any  provision  in  an  employment

SB 1457 — 2 —

1 agreement which provides that an employee shall assign
2 or offer to assign any of his or her rights in an invention
3 to his or her employer shall not apply to an invention for
4 which no equipment, supplies, facility, or trade secret
5 information of the employer was used and which was
6 developed entirely on the employee's own time, and ~~(a)~~
7 ~~which~~ *for which either of the following is true:*
8 *(1) It* does not relate ~~(1)~~ to the business of the
9 employer or ~~(2)~~ to the employer's actual or demonstrably
10 anticipated research or ~~development, or (b) which~~
11 *development.*
12 *(2) It* does not result from any work performed by the
13 employee for the employer.
14 *(b)* Any provision which purports to apply to such an
15 invention is to that extent against the public policy of this
16 state and is to that extent void and unenforceable.
17 *(c) As used in this article, "invention" includes, but is*
18 *not limited to, computer software.*
19 ~~2870. (a) As used in this article, "invention" means~~
20 ~~ideas, creations, and innovations in which there may be~~
21 ~~a property right, whether or not it is patentable or~~
22 ~~copyrightable under the laws of the United States.~~
23 ~~(b) Any provision in an employment agreement~~
24 ~~which provides that an employee shall assign or offer to~~
25 ~~assign any of his or her rights in an invention to his or her~~
26 ~~employer shall not apply to an invention for which all of~~
27 ~~the following are true:~~
28 ~~(1) No equipment, supplies, facility, or trade secret~~
29 ~~information of the employer was used.~~
30 ~~(2) It was developed entirely on the employee's own~~
31 ~~time.~~
32 ~~(3) It does not result from any work performed by the~~
33 ~~employee for the employer.~~
34 ~~(c) Any provision which purports to apply to such an~~
35 ~~invention is to that extent against the public policy of this~~
36 ~~state and is to that extent void and unenforceable.~~

O

Revised as amended - 8/16/84

SB  1457

ASSEMBLY THIRD READING

SB  1457  (_____Lockyer_____)  As Amended:  August 16, 1984

SENATE VOTE:  37-0

ASSEMBLY ACTIONS:

COMMITTEE_____L. & E._____VOTE  8-0    COMMITTEE_____VOTE_____

Ayes:                                Ayes:

Nays:                                Nays:

<u>DIGEST</u>

<u>Current law</u> provides that any provision in an employment agreement requiring an employee to assign his or her rights in an invention to his or her employer shall not apply to an invention for which no equipment, supplies, facility, or trade secret information of the employer was used, which was developed entirely on the employee's own time, and:

1)  Does not relate to the business of the employer or to the employer's actual or demonstrably anticipated research or development, or

2)  Does not result from any work performed by the employee for the employer.

Any provision in an employment agreement that purports to apply to such an invention is to that extent against state policy and void.

<u>This bill</u> revises the above provision of law and defines the term "invention" for the purpose of determining the scope of the law.

Specifically, the bill:

1)  Defines the term "invention" to include, but not be limited to, computer software.

2)  Restates current law to clarify that any provision in an employment agreement requiring an employee to assign his or her rights in an invention to his or her employer does not apply to an invention for which no equipment, supplies, facility, or trade secret information of the employer was used and which was developed entirely on the employee's own time, and <u>for which either of the following is true</u>:

a)  It does not relate to the business of the employer or to the employer's actual or demonstrably anticipated research or development.

b)  It does not result from any work performed by the employee for the employer.

-continued-

ASSEMBLY OFFICE OF RESEARCH                    SB  1457

3) Specifies that any provision in an employment agreement that purports to apply to such an invention is to that extent against state policy and void.

FISCAL EFFECT

None

COMMENTS

The purpose of this bill is to clarify existing law regarding the rights of employees to maintain ownership and control of inventions that were developed on their own time and with their own resources.

The Senate Industrial Relations Committee analysis reports:

1) The lack of a definition of an "invention" has reportedly led to disagreement over the scope of the law, with some employers arguing that it is limited to patentable items. Such a construction would exclude, for example, computer software programs which are not currently patentable.

2) The uncertainty over the application of this law stems from the complicated combinations of "and" and "or" subparts that are stated in the double negative.

8/17/84                      ASSEMBLY OFFICE OF RESEARCH                    SB 1457
18/po,jt,sp/AFA-101:88-89                                                    Page 2

Nguyen Exh. C p. 56

PROPOSED AMENDMENTS TO SENATE BILL <u>1457</u>

Legislative Counsel No. <u>014922</u>

(Goggin)


<u>The proposed amendments</u> delete the entire contents of the bill and, instead:

1)  Define the term "invention" to include, but not be limited to, computer
    software.

2)  Restate current law to clarify that any provision in an employment
    agreement requiring an employee to assign his or her rights in an
    invention to his or her employer shall not apply to an invention for which
    no equipment, supplies, facility, or trade secret information of the
    employer was used and which was developed entirely on the employee's own
    time, and <u>for which either of the following is true</u>:

    a)  It does not relate to the business of the employer or to the
        employer's actual or demonstrably anticipated research or development.

    b)  It does not result from any work performed by the employee for the
        employer.

Any provision in an employment agreement that purports to apply to such an
invention is to that extent against state policy and void.

Nguyen Exh. C p. 57

MR. SPEAKER AND MEMBERS:

SB 1457 is a clarification of an existing law, which I formerly authored, relating to the rights of an inventor that may exist regardless of any agreement with the employer regarding the transfer of such rights.  Under existing law, an inventor may retain rights to an invention if the research was done on the employee's own time, without use of the employer's equipment, facilities, or trade secrets, and if the invention is not a result of work done for the employer.  Under these circumstances, an employee-inventor retains his or her rights regardless of any agreement he or she may have signed.

A problem exists due to the nature of the high-tech industry, the sector of the economy most affected by this law.  Existing statute refers to an invention, which is interpreted to mean a product or innovation that is patentable.  Computer software programs are not currently patentable. Therefore, the inventor of a software program might not enjoy rights to his or her invention as may exist under the specific circumstances enumerated in current law.  It is our intent that such inventors should enjoy such rights, just as any other person would who invents a patentable item on his or her own.

This is a simple clarification, and a noncontroversial one.  The author has removed other, more controversial elements of the measure, so there is no known opposition.

I ask for an "aye" vote.

SB 1457 (Lockyer)
Last amended: 8/16/84
Analyzed:     8/28/84


ASSEMBLY LABOR & EMPLOYMENT COMMITTEE -- MINORITY

SB 1457 (Lockyer) -- OWNERSHIP OF INVENTIONS
    Lead Republican: Bill Jones

Description: Attempts to clarify existing law with respect
to rights of employees to maintain ownership of inventions
developed on their own time and with their own resources.
Goggin floor amendments delete contents of the bill and
define "invention" to include computer software.
Fiscal effect: Not a fiscal bill.

Supported by Alameda County Bar Association (sponsor), Crown
Zellerbach. Opposed by Calif. Manufacturers Assn., General
Electric, IBM.

Comments: Currently defines inventions in the Labor Code to
mean "ideas, creations and innovations" in which there is a
property right, even if not patentable or copyrightable.
Would prevent enforcement of an employment agreement
assigning his/her rights to any invention to the employer
where the employee did the inventing on his/her own time,
away from the site of employment, and in a field unrelated to
the employee's work for the employer.  CMA objects that
recent amendments would permit employees of large
corporations to learn of a software design idea in a car pool
or at a lunch, from a fellow employee not in the same
department or line of work as he/she may be, and to exploit
that idea privately to the employer's detriment.  CMA and
others object to the 8/16 amendments to totally rewrite the
bill to include computer software in the definition of
invention.  The bill passed the Assembly 58-10 on 8/7, with
all 10 No votes by Republicans and other members of the
caucus aye or N.V. The bill came back on 3rd reading after
Lockyer had the vote recinded in an effort to satisity the
opposition. They were not setisified, and at that point
Lockyer decided to let Goggin move the bill anyway.  Vote:
Majority.  Reccmmendation: Oppose amendments.  None on bill.

    Senate Republican Floor Vote -- 4/12/84
     (37-0)    All Republicans 'Aye'
    Assembly Republican Committee Vote
     Labor & Employment -- 5/29/84
     (8-0)     All Republicans 'Aye' (Bader, Wyman abs.)
      Consultant: Jim Bald

*343*

UNFINISHED BUSINESS

| SENATE DEMOCRATIC CAUCUS | Bill No.: SB 1457  Amended: 8/16/84 |
|---|---|
| SENATOR PAUL B. CARPENTER<br>Chairman<br>SENATOR RALPH C. DILLS<br>Vice Chairman | Author:  Lockyer  (D)<br><br>Vote Required:  Majority<br><br>Assembly Floor Vote:  58-10 |

SUBJECT:  Employee inventions

POLICY COMMITTEE:  Industrial Relations

AYES:  (7)  Leroy Greene, Lockyer, Petris, Rosenthal, Russell, Royce, Bill Greene

NOES:  (0)

**Roll Call**

The roll was called and the bill was passed by the following vote:
AYES (37)—Senators Alquist, Ayala, Beverly, Boatwright, Campbell, Craven, Davis, Dills, Doolittle, Ellis, Foran, Garamendi, Bill Greene, Leroy Greene, Hart, Johnson, Keene, Lockyer, Maddy, Marks, McCorquodale, Mello, Montoya, Nielsen, Petris, Presley, Robbins, Roberti, Rosenthal, Royce, Russell, Seymour, Speraw, Stiern, Torres, Vuich, and Watson.
NOES (0)—None.
Bill ordered transmitted to the Assembly.

4-12-84                                        p. 9447

**AYES**

| | | |
|---|---|---|
| Agnos | Farr | Kelley | Robinson |
| Allen | Felando | Killea | Rogers |
| | Filante | Klehs | |
| Baker | Floyd | Konnyu | Sebastiani |
| Bergeson | Frazee | Leonard | Sher |
| Bradley | Goggin | Lewis | Stirling |
| Calderon | Hannigan | Margolin | Tanner |
| Campbell | Harris | McAlister | Tucker |
| Chacon | Hauser | Molina | Waters, Maxine |
| Clute | Hayden | Moore | Waters, Norman |
| Condit | Herger | Moorehead | Wyman |
| Connelly | Hughes | Mountjoy | Young |
| Cortese | Isenberg | Naylor | Mr. Speaker |
| Costa | Johnston | Papan | |
| Davis | Katz | Peace | |

**NOES**

| | | |
|---|---|---|
| Brown, Dennis | La Follette | Nolan | Wright |
| Hill | McClintock | Seastrand | |
| Jones | Mojonnier | Stirling | |

Bill ordered transmitted to the Senate.

8-3-84                                        p. 18320

Aug.    7—In Senate. To unfinished business.
Aug.    9—Returned to Assembly for further action.
Aug.    9—In Assembly. Action rescinded whereby bill passed and to Senate.

CONTINUED

Nguyen Exh. C p. 60